UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **LYNDSEE MILLER,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**EXTREME LOANS LLC,** a Michigan company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Lyndsee Miller ("Plaintiff Miller" or "Miller") brings this Class Action Complaint and Demand for Jury Trial against Defendant Extreme Loans LLC, ("Defendant" or "Extreme Loans") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Miller, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Miller is a resident of Evansville, Indiana.

2. Defendant Extreme Loans is a company registered in Michigan, with its headquarters located in Southfield, Michigan. Defendant Extreme Loans conducts business throughout this District and throughout the US, including Indiana.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.       When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.       By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.       The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.       According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in May 2023 alone, at a rate of 164.0 million per day. www.robocallindex.com (last visited July 2, 2023).

10.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.      "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.      "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant Extreme Loans provides mortgage-related services including loan refinancing for consumers.[3]

14. Defendant Extreme Loans places telemarketing cold calls to consumers who have done a credit pull, as per Plaintiff's experience, despite the fact that those consumers have never provided consent to receive telemarketing calls.

15. Former Extreme Loans employees listed cold calling as part of their jobs working for Extreme Loans on Linkedin:

[4]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://extremeloans.com/about-us/
[4] https://www.linkedin.com/in/haley-lutherloh-6a698a149/



**Felixia Daniel** (She/Her)
Marketing Student at Wayne State University - Mike Ilitch School of Business

**Extreme Loans**
Full-time · 7 mos
Southfield, Michigan, United States

- **Mortgage Loan Officer**
  Jan 2022 - Apr 2022 · 4 mos

  - Meets with and interviews potential and current clients to understand their lending needs including first-time mortgages and refinance of existing loans.
  - Explains the differences between and approval requirements of various types of mortgages; prepares and presents a lending package based on client specifications.
  - Assists clients with completion of mortgage applications, inspecting completed documents for accuracy and thoroughness.
  - Reviews loan applications, gathers credit histories and reports, and assesses applicants capacity to repay and default risk.

- **Telemarketing Agent**
  Oct 2021 - Jan 2022 · 4 mos

  - Delivering scripted talks that describe the company's products or services to persuade potential customers
  - <u>Perform a heavy volume of inbound and outbound phone duties, including lead generation through cold calling and appointment setting</u>, geared towards refinancing current mortgage or getting a new purchase mortgage
  - Obtaining and reviewing customer information such as name, address, phone number, and goal for refinance before transferring to Mortgage Loan Officer [5]

16. In addition, Extreme Loans posted a video on its Facebook page stating that one of its mortgage loan officers placed 30,000 cold calls, according to the dialer screen that is set-up in the main office:

---

[5] https://www.linkedin.com/in/felixia-daniel-936410197/

5



[6]

17. Unfortunately, some of the calls from Extreme Loans are being placed to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

18. To make matters worse, Extreme Loans lacks a sufficient opt-out system to ensure that a consumer who notifies Extreme Loans to stop calling them will be removed from their calling list, again, as per Plaintiff's experience.

19. A consumer posted a complaint online that Extreme Loans responded to, alleging that his information was possibly acquired by Extreme Loans through a

---

[6] https://www.facebook.com/profile/100063756446392/search/?q=cold%20call

credit bureau, causing him to receive unsolicited calls, despite having his phone number registered on the DNC and despite opting-out from the calls:



20. In response to these calls, Plaintiff Miller brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF MILLER'S ALLEGATIONS

21. Plaintiff Miller registered her cell phone number on the DNC on April 6, 2004.

22. Plaintiff Miller uses her cell phone number for personal use only as one would use a landline telephone number in a home.

---

[7] https://www.google.com/search?q=Extreme+Loans

7

23. The calls that Plaintiff Miller received from Defendant Extreme Loans were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

24. Toward the middle of June 2023, Plaintiff Miller had her credit pulled by her bank.

25. Plaintiff Miller did not fill out any documentation online. She was not looking to get a loan from any organization other than her bank.

26. As soon as her credit was pulled, Plaintiff Miller began receiving unsolicited telemarketing calls to her cell phone regarding loans and refinancing. The majority of the callers did not disclose a company name.

27. On June 14, 2023, Plaintiff Miller received an unsolicited call from Extreme Loans to her cell phone, from 812-875-5008. She did not answer this call.

28. As will be explained, Plaintiff Miller was able to confirm that 812-875-5008 is used by an Extreme Loans employee.

29. On June 14, 2023, Plaintiff Miller received a 2nd unsolicited call from Extreme Loans to her cell phone, from 812-998-5157. This call was not answered.

30. 812-998-5157 is owned/operated by Extreme Loans.[8]

31. On June 15, 2023, Plaintiff Miller received a 3rd unsolicited call from Extreme Loans to her cell phone, from 812-783-1047. This call was not answered.

---

[8] Based on an investigation conducted by Plaintiff's attorneys.

32. 812-783-1047 is owned/operated by Extreme Loans.[9]

33. On June 22, 2023, Plaintiff Miller received a 4th unsolicited call from Extreme Loans to her cell phone, from 812-875-5008. This call was not answered.

34. Frustrated by all the calls she had received, Plaintiff Miller called 812-875-5008 back on June 22, 2023. She spoke to an employee named Chris Kinaya who solicited the sale of a mortgage loan/refinancing.

35. Kinaya was not forthcoming with the name of the company he works for. When Plaintiff would ask for the name, Kinaya would continue trying to sell a mortgage loan.

36. Plaintiff felt that she had to display interest in a mortgage so she could identify the name of the company who was calling her without consent. When she did this, Kinaya told Plaintiff Miller that he works for Extreme Loans and that the loans are processed by United Wholesale.

37. Plaintiff Miller complained to Kinaya about the unsolicited calls that she was receiving, demanding that the calls stop.

38. Despite her clear stop request, Plaintiff Miller received a 5th unsolicited telemarketing call from Extreme Loans on June 27, 2023 to her cell phone, again from 812-875-5008. This call was not answered.

---

[9] Based on an investigation conducted by Plaintiff's attorneys.

39. Plaintiff Miller received a 6th unsolicited telemarketing call from Extreme Loans on July 1, 2023 to her cell phone, again from 812-998-5157. This call was not answered.

40. Plaintiff Miller received other unsolicited calls from Extreme Loans to her cell phone between June 14, 2023 and June 30, 2023.

41. Plaintiff Miller has never done business with Extreme Loans and has never given them consent to call her phone number.

42. The unauthorized solicitation telephone calls that Plaintiff Miller received from or on behalf of Defendant Extreme Loans have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

43. Seeking redress for these injuries, Plaintiff Miller, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

44. Plaintiff Miller brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Extreme Loans called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

10

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Extreme Loans called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

45. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Miller anticipates the need to amend the Class definition following appropriate discovery.

46. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

11

Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

    (c)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

    (d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

48.    **Adequate Representation**: Plaintiff Miller will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Miller has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Miller and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Miller nor her counsel have any interest adverse to the Classes.

49.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable

to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Miller. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miller and the Do Not Registry Class)**

50.  Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

51.  The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone

13

solicitations that is maintained by the federal government."

52. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

53. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Miller and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

54. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Miller and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

55. As a result of Defendant's conduct as alleged herein, Plaintiff Miller and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such

violations of 47 C.F.R. § 64.1200.

56. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Miller and the Internal Do Not Call Class)**

57. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

58. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-

not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

59. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of

persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

60. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

61. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

17

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Miller requests a jury trial.

Respectfully Submitted,

**LYNDSEE MILLER**, individually and on behalf of all others similarly situated,

DATED this 19th day of July, 2023.

By: /s/ *Stefan Coleman*

Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.

18

237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*