**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**LYNDSEE MILLER**, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

**EXTREME LOANS LLC**, a Michigan company,

Defendant.

Case 2:23-cv-11727-LVP-KGA

Hon. Linda V. Parker
Mag. Judge Kimberly G. Altman

**DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S COMPLAINT**

Defendant Extreme Loans LLC ("Extreme") hereby respectfully moves to dismiss the Complaint (*see* ECF No. 1, "Complaint") filed by Plaintiff Lyndsee Miller ("Plaintiff") in the above-captioned matter, in its entirety, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 8 and/or 12(b)(6). In the alternative, Extreme respectfully moves to strike certain improper allegations from the Complaint pursuant to Fed. R. Civ. P. 12(f), and to strike Plaintiff's faulty class definitions and other class-related allegations under Fed. R. Civ. P. 12(f) and 23, identified below. The bases for this Motion are more fully set forth in the attached Memorandum in Support, which is incorporated herein by reference as if fully stated.

Pursuant to Local Rule 7.1 and the Court's Practice Guidelines, the undersigned certifies that counsel for Extreme made reasonable and timely efforts to confer with counsel for Plaintiff regarding the specific bases for this Motion and whether Plaintiff would concur with the relief sought herein prior to filing same, including emails sent on September 14, 15, and 18, 2023. Plaintiff's counsel responded in writing on September 18, 2023, indicating that Plaintiff does not concur in the relief sought.

Dated: September 18, 2023

Respectfully submitted,

By: /s/ A. Paul Heeringa

**MANATT, PHELPS & PHILLIPS, LLP**
John W. McGuinness (CA Bar No. 277322)*
A. Paul Heeringa (IL Bar No. 6288233)*
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
(312) 399-9607
Email: jmcguinness@manatt.com
pheeringa@manatt.com

**Howard & Howard**
Jonathan F. Karmo (MI Bar No. 76768)**
450 W 4th St.
Royal Oak, MI 48067
(248) 645-1483
jkarmo@howardandhoward.com

***Attorneys for Defendant Extreme Loans LLC***

**Permanently admitted to E.D. Mich. Bar*
*** Local Counsel*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................1

RELEVANT ALLEGATIONS ....................4

APPLICABLE LEGAL STANDARDS ....................5

ARGUMENT ....................6

I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ....................6

A. Plaintiff Fails to Plead Sufficient Facts Demonstrating that Extreme is Directly Liable under the TCPA for Each Phone Call at Issue ....................7

B. Plaintiff Fails to Allege the Phone Number At Issue and, Therefore, Fails to Give Extreme "Fair Notice" of her Asserted Claims ....................10

C. Plaintiff Fails to Adequately Plead Facts Supporting the Other Essential Elements of her TCPA DNC Claims ....................11

i. Plaintiff Does Not Plead Facts Demonstrating that She Qualifies as a "Residential Telephone Subscriber" Under the TCPA ....................11

ii. Plaintiff Does Not Allege Facts Showing She Received a "Telephone Solicitation" or "Telemarketing" Calls ....................15

iii. Plaintiff Fails to Plead Facts Demonstrating a Violation of the TCPA's "Internal" DNC Regulations (Count II) ....................17

II. ALTERNATIVELY, THE COURT SHOULD STRIKE CERTAIN IMPROPER ALLEGATIONS UNDER RULES 12(F) AND 23 ....................19

A. Paragraphs 15-19 are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and Should be Stricken Accordingly ....................19

B. Plaintiff's Faulty Proposed Class Definitions Should Be Stricken Pursuant to Rule 12(f) and Rule 23 on Predominance Grounds ....................21

CONCLUSION ....................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 6

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ....................9

*Barnett v. Bank of Am., NA*,
2021 WL 2187950 (W.D.N.C. May 28, 2021)....................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 6

*Benzion v. Vivint, Inc.*,
2014 WL 11531368 (S.D. Fla. Jan. 17, 2014)....................17, 19

*Black v. SunPath Ltd.*,
2022 WL 4241270 (M.D. Tenn. Sept. 14, 2022), *appeal dismissed,* 2022 WL 18304462 (6th Cir. Dec. 27, 2022)....................7

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021)....................1, 7, 9

*Callier v. Nat'l United Grp., LLC*,
2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)....................19

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) ....................17, 18

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ....................12, 17

*Cholly v. Uptain Grp., Inc.*,
2017 WL 449176 (N.D. Ill. Feb. 1, 2017) ....................23, 25

*Conde v. Sensa*,
259 F. Supp. 3d 1064 (S.D. Cal. 2017) ....................20

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2021 WL 1946645 (M.D. Tenn. May 14, 2021) ....................1, 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Cunningham v. McDonald*,
2018 WL 6737418 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL 6198417 (Nov. 28, 2018) ....................12

*Cunningham v. Rapid Capital Funding, LLC/RCF,*
2017 WL 3574451 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) ....................13

*Dahdah v. Rocket Mortgage LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023) ....................3, 15, 16

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ....................16

*Eidson v. Tenn. Dep't of Child. Servs.*,
510 F.3d 631 (6th Cir. 2007) ....................6

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) ....................22, 23, 24, 25

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ....................20

*Flores v. City of Cal. City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) ....................25

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................1, 14, 15

*Glazer v. Reimer L. Co.*,
2019 WL 651599 (N.D. Ohio Feb. 15, 2019) ....................22

*Hicks v. Alarm.com Inc.*,
2020 WL 9261758 (E.D. Va. Aug. 8. 2020) ....................13, 14, 20, 21

*Hirsch v. USHealth Advisors, LLC*,
337 F.R.D. 118 (N.D. Tex. 2020) ....................24, 25

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
934 F. Supp. 2d 1219 (C.D. Cal. 2013) ....................20

*In Re Rules & Regs. Implementing the TCPA*,
18 F.C.C. Rcd. 14014 (2003) ....................19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Jones v. City of Cincinnati*,
521 F.3d 555 (6th Cir. 2008) ....................6

*Katz v. CrossCountry Mortg., LLC*,
2022 WL 16950481 (N.D. Ohio Nov. 15, 2022)....................3, 15, 16

*Kennedy v. Cleveland*,
797 F.2d 297 (6th Cir. 1986) ....................22

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020) ....................17, 19

*Loreto v. Procter & Gamble Co.*,
2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ....................21

*Lucas v. Telemarketer Calling from (407) 476-5680*,
2019 WL 3021233 (6th Cir. May 29, 2019)....................1, 2, 7

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011)....................20

*Mantha v. QuoteWizard.com, LLC*,
2022 WL 325722 (D. Mass. Feb. 3, 2022)....................14

*Mendez v. Optio Sols., LLC*,
219 F. Supp. 3d 1012 (S.D. Cal. 2016) ....................2, 10, 11

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ....................8, 9

*Morgan v. U.S. Xpress, Inc.*,
2018 WL 3580775 (W.D. Va. July 25, 2018) ....................13

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016)....................23

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ....................22

*Rahimian v. Adriano*,
2022 WL 798371 (D. Nev. Mar. 16, 2022) ....................18, 19

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)....................14, 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009) ............................................................20

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ..........................................................................23

*Sauter v. CVS Pharmacy, Inc.*,
2014 WL 1814076 (S.D. Ohio May 7, 2014) ..................................................21

*Sherrod v. Enigma Software Grp. USA, LLC*,
2016 WL 25979 (S.D. Ohio Jan. 4, 2016) .......................................................23

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ..................................................13

*Strand v. Corinthian Colleges, Inc.*,
2014 WL 1515494 (W.D. Mich. Apr. 17, 2014) ..............................................11

*Tam Travel, Inc. v. Delta Airlines, Inc.*,
583 F.3d 896 (6th Cir. 2009) ............................................................................6

*Trenz v. On-Line Administrators, Inc.*,
2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) .................................................23

*U.S. Diamond & Gold v. Julius Klein Diamonds LLC*,
2007 WL 1026421 (S.D. Ohio Mar. 29, 2007)..................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).....................................................................................23

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) .....................................................................15

*Wiseberg v. Toyota Motor Corp.*,
2012 WL 1108542 (D.N.J. Mar. 30, 2012), *on reconsideration in part*,
2012 WL 12910267 (Aug. 17, 2012) ...............................................................21

*Woo v. Home Loan Group, L.P.*,
2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) ....................................................20

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) ..................................................22

**STATUTES**

47 U.S.C. § 227(c) ........................................................................................passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

47 U.S.C. § 227(d) .......... 7
47 U.S.C. § 227(f) .......... 12

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c) .......... passim
47 C.F.R. § 64.1200(d) .......... passim
47 C.F.R. § 64.1200(f) .......... 15

**RULES**

Fed. R. Civ. P. 8(a) .......... 2
Fed. R. Civ. P. 12(b)(6) .......... passim
Fed. R. Civ. P. 12(f) .......... passim
Fed. R. Civ. P. 23 .......... passim

## ISSUES PRESENTED

1. Whether Plaintiff has adequately pled a plausible claim for relief under Fed. R. Civ. P. 8 and/or 12(b)(6). Extreme answers: "No."

2. Whether Plaintiff's facially improper class and other allegations should be stricken under Fed. R Civ. P. 12(f) and/or 23. Extreme answers: "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730 (E.D. Mich. Sept. 12, 2023)

- *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009)

- *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011)

- *Lucas v. Telemarketer*, 2019 WL 3021233 (6th Cir. May 29, 2019)

- *Sandusky Wellness Ctr. v. ASD Specialty Healthcare,* 863 F.3d 460 (6th Cir. 2017)

## INTRODUCTION

Plaintiff alleges Extreme violated the "Do-Not-Call" ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA") by supposedly "cold calling" her cell phone number—which she does not provide in her Complaint but claims is on the National DNC Registry—after her bank pulled her credit. However, Plaintiff fails to allege sufficient non-conclusory facts supporting a plausible inference that Extreme bears any legal liability for those calls, let alone that they even violated the TCPA in the first instance. In fact, ***Plaintiff readily admits she did not answer any of the calls at issue*** that she baldly claims in her Complaint were "from Extreme Loans." Thus, her Complaint is ripe for dismissal in its entirety for at least the following reasons:

**First**, the entire Complaint should be dismissed under Rule 12(b)(6) for the simple threshold reason that, aside from a few bald conclusions which are not entitled to any presumption of truth at the pleadings stage, it lacks plausible facts that would "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue. *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (emphasis added). *See also Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019) (recognizing that successfully pleading direct liability under the TCPA requires pleading facts demonstrating that the defendant itself, not a third party, physically placed the calls at issue); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL

1946645, at *2 (M.D. Tenn. May 14, 2021) (dismissing on this basis, applying *Lucas*). In this regard, Plaintiff at best merely concludes that certain calls originated "from Extreme Loans." Yet, she otherwise does not connect Extreme to each call or phone number used to call her with sufficient actual supporting facts, such that the Court could reasonably infer that Extreme is directly liable for each alleged call, as required.

**Second**, as an additional threshold matter, Plaintiff's claims should be dismissed in their entirety under Rules 8(a) and 12(b)(6) because her Complaint does not provide her cell phone number (even partially) and, therefore, she has not provided Extreme with "fair notice" of her TCPA claims. *See, e.g., Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1015 (S.D. Cal. 2016) (dismissing TCPA claim on this basis).

**Third**, the Complaint should further be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts supporting other essential elements of her asserted claims. For example, Plaintiff does not plead facts demonstrating she actually uses her cell phone number for "residential" purposes, such that she would qualify as a "residential telephone subscriber" within the meaning of the TCPA. Since a cause of action under the TCPA's DNC provisions can only be brought by "residential" subscribers, failure to meet this key element is likewise fatal to her whole Complaint.

**Fourth**, Plaintiff similarly fails to plead facts demonstrating that each call at issue constituted a "telephone solicitation" (as required for pleading a violation of the National DNC Registry provisions, asserted in Count I of the Complaint) or were for

"telemarketing purposes" (as required for pleading a violation of the "internal" DNC regulations, asserted in Count II) within the meaning of the statute. Nor could she do so, since she did not answer any of them. Courts in the Sixth Circuit, this District, and elsewhere have recognized that plaintiffs cannot merely parrot the statutory text in this regard without providing the content of a call (like Plaintiff did) and avoid dismissal. *See, e.g., Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023) (citing *inter alia, Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022)). This Court should rule similarly here.

**Fifth**, Plaintiff's "internal" DNC claim (Count II) should also be dismissed under Rule 12(b)(6) because she fails to allege sufficient (or any) facts suggesting that Extreme did not maintain internal DNC procedures, as specified by the TCPA's related implementing regulations, at the time of the calls at issue in accordance with binding authority. She relies instead on naked conclusions, which is insufficient.

**Lastly**, while the entire Complaint should be dismissed on at least the multiple dispositive grounds provided above, it also attempts to interject various immaterial and impertinent allegations from anonymous posts on third-party websites that have nothing to do with ***this*** case. Plaintiff's class allegations are also facially inadequate, such that certification cannot be granted as pled. Thus, Extreme respectfully submits that the Court should nevertheless strike those clearly improper allegations now under Rules 12(f) and/or 23, before the parties waste effort in discovery relating to them.

## RELEVANT ALLEGATIONS

In pertinent part, Plaintiff alleges that she registered her cell phone number on the National DNC Registry on April 6, 2004, but does not provide any part of the phone number. *See* ECF No. 1, ¶ 21, PageID.7. She further alleges—or, rather, merely concludes without factual support—that she "uses her cell phone number for personal use only as one would use a landline telephone number in a home." *Id.* ¶ 22, PageID.7.

Plaintiff claims that, "[t]oward the middle of June 2023," she "had her credit pulled by her bank" and, thereafter, "began receiving unsolicited telemarketing calls [made] to her cell phone regarding loans and refinancing" by various callers, the "majority" of whom "did not disclose a company name." *Id.* ¶¶ 24 and 26, PageID.8-9. Plaintiff avers that she received six calls on and between June 14, 2023 and July 1, 2023 from three different numbers that she concludes were "from Extreme Loans," but readily admits ***she did not answer any of these calls***. *Id.* ¶¶ 27-39, PageID.8-10.[1]

At best, Plaintiff alleges that, on June 22, 2023 after receiving four calls she did not answer, ***she called*** one of the numbers used to call her (812-875-5008) and purportedly spoke to someone who said that he "works for Extreme Loans" but also

[1] Plaintiff's Complaint only discusses six calls that she claims were "from Extreme Loans" allegedly occurring on: (1) June 14, 2023 from 812-875-5008, (2) June 14, 2023 from 812-998-5157, (3) June 15, 2023 from 812-783-1047, (4) June 22, 2023 from 812-875-5008, (5) June 27, 2023 from 812-875-5008, and (6) July 1, 2023 from 812-998-5157. *Id*. Plaintiff concludes that she "received other unsolicited calls from Extreme Loans to her cell phone between June 14, 2023 and June 30, 2023" (*id*. ¶¶ 40, PageID.10); yet, she does not give the dates, numbers used, or content thereof, let alone indicate whether she even answered them or connect Extreme to them.

"that the loans are processed by United Wholesale," and "who solicited the sale of a mortgage loan/refinancing." *Id*. ¶¶ 34-36, PageID.9. Seemingly based on this one vaguely-described exchange, Plaintiff claims that the 5008 number she called back "is used by an Extreme Loans employee." *Id*. ¶ 28, PageID.8. As to the balance, while she concludes that the other numbers used to call her are "owned/operated by Extreme Loans," Plaintiff provides no factual support for this and, instead, vaguely avers ***in footnotes*** without elaboration that her conclusions are "[b]ased on an investigation conducted by [her] attorneys." *Id.* ¶¶ 29-32 & fns. 8 and 9 thereto, PageID.8-10.

Plaintiff claims that, during the June 22nd call she made, she "demand[ed] that the calls stop," but yet received one more call from the same 5008 number on June 27, 2023, and another call she concludes was "from Extreme Loans" from a different number (ending in 5157) on July 1, 2023, neither of which she answered. *Id*. ¶¶ 37-38, PageID.9. Plaintiff does not allege she received any more calls "from Extreme Loans" in the interim 18 days prior to filing her Complaint on July 19, 2023.

## APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) mandates dismissal of a complaint that fails to state a claim for relief. To avoid dismissal, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). While the Court must generally accept well-pleaded factual allegations as true, it need not do so for legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See e.g., Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6).

Plaintiff seeks relief under the TCPA's DNC provisions and related implementing regulations, which together and in pertinent part: (i) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry (which is pled in Count I of the Complaint); and (ii) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made to them within a "reasonable time" and to have internal DNC policies and

procedures in place meeting certain minimum standards (which is pled in Count II). 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d); *see also* ECF No. 1, ¶¶ 50-61, PageID.13-17. As shown below, however, Plaintiff's Complaint fails to plead sufficient actual facts supporting the elements of her claims for several reasons.

### A. Plaintiff Fails to Plead Sufficient Facts Demonstrating that Extreme is Directly Liable under the TCPA for Each Phone Call at Issue.

For starters, Plaintiff "must allege in her [C]omplaint that [Extreme] made ***each call*** that she seeks to hold it [directly] liable for" to successfully plead ***any*** TCPA claim and avoid dismissal under Rule 12(b)(6). *Brownlee,* 2021 WL 4306160, at *1 (dismissing this basis) (emphasis added). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (holding that, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"). Moreover, as noted above, direct TCPA liability requires pleading sufficient non-conclusory facts demonstrating that the ***defendant itself***, not a third party, ***physically*** placed the calls at issue. *See, e.g., id.*; *Lucas,* 2019 WL 3021233, at *5-6; *Cunningham*, 2021 WL 1946645, at *2; *see also Black v. SunPath Ltd.,* 2022 WL 4241270, at *3 (M.D. Tenn. Sept. 14, 2022), *appeal dismissed,* 2022 WL 18304462 (6th Cir. Dec. 27, 2022) (discussing the requirements for pleading direct and vicarious

TCPA liability).[2] Here, Plaintiff fails to meet even this basic threshold pleading requirement for all TCPA claims, which alone is fatal to her entire Complaint.

Indeed, Plaintiff's threadbare and conclusory allegations that she received calls "from Extreme Loans" do not permit this Court to reasonably infer that Extreme is directly liable for each (or any) call at issue here. For example, as noted above, Plaintiff admits that she did not answer <u>any</u> of the six calls that were purportedly made to her cell phone "from Extreme Loans" discussed in the Complaint, and thus provides no content for any call at issue. *See* ECF No. 1, ¶¶ 27-39, PageID.8-10). She also does not claim that Extreme's name appeared on her Caller ID for any of the calls at issue, or that she or her counsel called back two of the three phone numbers (ending in 5157 or 1047) allegedly used to call her. Merely asserting that an allegedly-violative call originated from a phone number "owned/operated" by the defendant (as Plaintiff did here) does not, without more, state a plausible direct TCPA liability claim. *See, e.g., Aaronson*, 2019 WL 8953349, at *2 ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically

[2] *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis and holding that <u>all</u> TCPA plaintiffs must first "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call").

initiated the telephone calls at issue."); *Metzler*, 2023 WL 1779631, at *6 (dismissing, noting: "Plaintiff alleges that [d]efendant owns or operates the telephone number from which the offending call originated. [ ] That allegation is entirely conclusory.").

Similarly, as to the third number (ending in 5008) allegedly used to call Plaintiff, she does not plead that the "employee" with whom she purportedly spoke (when she called it back) indicated that Extreme itself physically placed any calls to her using that number or any others. That this person allegedly said he "worked for" Extreme is also insufficient to plead direct TCPA liability, standing alone. *See, e.g., Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing one plaintiff's claims on this basis, even though he called the number used and allegedly spoke to someone "who identified herself as working for" defendant).

Moreover, (a) that her attorneys purportedly conducted an "investigation" on the other two of the numbers used to call her (*see* ECF No. 1*,* ¶¶ 29-32 & fns. 8 and 9 thereto, PageID.8-10) does not make Plaintiff's allegations on this front any less conclusory, especially considering that she does not describe what this supposed "investigation" entailed; and (b) she alleges elsewhere that she received calls from other mortgage companies around the same time period, the "majority" of whom "did not disclose a company name" (*id.* ¶ 25, Page.ID 8). *See also Brownlee,* 2021 WL 4306160, at *1 ("Defendant is not the sole seller of car insurance. Numerous other companies sell car insurance. Further, spoofing is not unique; it is entirely possible

that another car insurance company similarly engaged in spoofing to contact the plaintiff."). Thus, it is just as plausible, if not more so, to infer that some or all of the calls of which Plaintiff complains in this case did not even involve Extreme at all.

In sum, Plaintiff does little more than conclude she received calls "from Extreme Loans," but does not plead plausible facts showing Extreme itself physically placed each (or any) call, as required. As such, the Complaint should be dismissed.

**B. Plaintiff Fails to Allege the Phone Number At Issue and, Therefore, Fails to Give Extreme "Fair Notice" of her Asserted Claims.**

As one federal district court aptly noted when dismissing a TCPA case on this basis, "[i]n order for [a defendant] to competently answer the [C]omplaint, it is necessary that it be able to identify those calls which form the basis for its potential liability." *Mendez*, 219 F. Supp. 3d at 1015. This necessarily requires that Extreme have the ability to identify the phone number(s) it allegedly called. Such basic facts are particularly critical in a TCPA DNC case like this one, where Plaintiff's claims rest squarely on whether and when her cell number was registered National DNC Registry, or if and when she asked for her number to be put on an internal DNC list.

Here, Plaintiff fails to allege even a redacted version of number(s) at issue, though such information is surely in her possession and could readily be pled. But as it stands, Extreme cannot reasonably be expected to search its records and identify the calls at issue (or any associated consent) for Plaintiff, absent at least ***some*** information regarding the phone number(s) to which Plaintiff claims she received the allegedly

violative calls. Her failure to plead the phone number(s) at issue (even in part) further hampers Extreme's ability to validate other allegations made in the Complaint, such as those concerning registration of a number to the National DNC Registry or receipt of calls after a request not to be called further. Thus, the Complaint should be dismissed in its entirety on this basis alone, as well, as Plaintiff's failure to plead this basic information does not give Extreme "fair notice" of her TCPA claims. *See Mendez*, 219 F. Supp. 3d at 1015 (finding it was "reasonable to require [the plaintiff] to disclose in her complaint a redacted version of the phone number at issue, such as the phone number's last four digits" to provide the defendant with fair notice of her TCPA claim); *see also Strand v. Corinthian Colleges, Inc.*, 2014 WL 1515494, at *3 (W.D. Mich. Apr. 17, 2014) (ruling similarly and dismissing on this basis).

### C. Plaintiff Fails to Adequately Plead Facts Supporting the Other Essential Elements of her TCPA DNC Claims.

Plaintiff also fails to plead facts supporting other essential elements of her asserted DNC claims, which further warrants their dismissal, on several levels:

#### i. Plaintiff Does Not Plead Facts Demonstrating that She Qualifies as a "Residential Telephone Subscriber" Under the TCPA.

For starters, the TCPA's DNC provisions and the "internal" DNC regulations, on their face, plainly apply only to "***residential*** telephone subscribers" and not to all phone numbers. 47 U.S.C. § 227(c)(5) (emphasis added); *see also* 47 C.F.R. § 64.1200(d) (stating "[n]o person or entity shall initiate any call for telemarketing purposes to a ***residential telephone subscriber*** unless such person or entity has

instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.") (emphasis added)); *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 629 (6th Cir. 2009) ("[T]he FCC has promulgated [internal] regulations prohibiting telemarketers from placing telephone calls to ***residential telephone subscribers*** without following certain procedures.") (emphasis added) (citing 47 C.F.R. § 64.1200(d); 47 U.S.C. §§ 227(c)(5) & (f)).

While some cellular telephones potentially ***can*** satisfy the "residential telephone subscriber" element of Sections 227(c)(5) and 64.1200(d), this is by no means automatic, and mere bald conclusions will not suffice to plead this essential element of a TCPA DNC claim. Rather, it is well settled that, to survive dismissal on this basis, Plaintiff must allege actual facts establishing that the phone number on which the alleged calls were received is actually used for "residential" purposes. *See, e.g.*, *Cunningham v. McDonald*, 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted*, 2018 WL 6198417 (Nov. 28, 2018) (acknowledging that a cell phone may fall within the definition of a "residential telephone subscriber" but denying default judgment based upon alleged violation of 47 C.F.R.§ 64.1200(d) where the plaintiff "allege[d] only that calls were made to his cellular phone").

Consequently, courts have often dismissed TCPA DNC claims under Rule 12(b)(6), like Plaintiff's here, where there are insufficient facts pled from which to infer that the subject phone number (*i.e.,* the number on which the alleged violative

calls are received) is ***actually used*** for "residential" purposes. *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF,* 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted,* 2017 WL 3776165 (Aug. 31, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim" under Section 227(c).); *Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (holding plaintiff's characterization that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute"). This is true even if the number is allegedly on the National DNC Registry. *See, e.g., Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (dismissing where plaintiff did not allege the "cell phone line in question is his residential phone, as required");[3] *Hicks v. Alarm.com Inc*., 2020 WL 9261758, at *5 (E.D. Va. Aug. 8. 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of ***this*** case or the use of his phone.") (emphasis original).

Moreover, courts have also found whether someone qualifies as a "residential subscriber" under the TCPA generally depends on certain conditions, including whether the subject number "is the primary means of reaching the individual at their residence—that is, ***there is no other landline or phone at their residence which is***

[3] *See also* Case No. 2:20-cv-02185 (E.D. Pa.), Dkt. 1, ¶ 17 (dismissed complaint in *Vision Solar*, alleging plaintiff's cell phone number was on the Registry).

***instead the primary means of reaching them*** " there. *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022) (emphasis added).

Here, Plaintiff merely concludes that her cell phone number is "for personal use only as one would use a landline telephone number in a home." ECF No. 1, ¶ 22, PageID.7. Yet, Plaintiff's bald characterization of her cell number as being for "personal use only" is, without more, insufficient to plausibly allege "residential" use for purposes of a TCPA DNC claim. *See, e.g., Hicks*, 2020 WL 9261758, at *5 (dismissing TCPA case brought by same counsel as Plaintiff's on this basis where the plaintiff alleged his cell phone number was "not associated with a business and is for personal use"); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023) (dismissing, holding that alleged "personal" use of the subject number was insufficient to plead this element, and noting that "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can be pleaded to remove any doubt about … whether those numbers are for residential use:); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (ruling similarly in TCPA case brought by the same counsel as Plaintiff's, dismissing ***with prejudice***).

Indeed, Plaintiff does not plead, for example, that her cell number is "***primary*** means of reaching [her] at [her] ***residence***" or "there is ***no other*** landline or phone at [her] residence which is instead the ***primary*** means of reaching" her there. *Mantha,* 2022 WL 325722, at *6 (emphasis added). Such facts are surely within her

knowledge, and could (and should) easily be pled to remove any doubt as to the use of her number. *See Rogers*, *supra*. That they were not is telling and warrants dismissal.

**ii. Plaintiff Does Not Allege Facts Showing She Received a "Telephone Solicitation" or "Telemarketing" Calls.**

Furthermore, Section 227(c) of the TCPA "relates solely to telemarketing and solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to survive dismissal in this case, Plaintiff must also plead facts suggesting her receipt of a "telephone solicitation"—which in turn is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Similarly, the "internal" DNC rules, on their face, only apply for calls made for "telemarketing" purposes, which has a substantially similar definition. *See id.,* §§ 64.1200(d), (f)(13).

Along these lines, courts in this Circuit, including in this District, and elsewhere have frequently dismissed DNC claims where the plaintiff fails to plead actual facts, beyond naked conclusions or simply parroting the statutory text, demonstrating that a call they received fits these definitions. *See, e.g., Dahdah,* 2023 WL 5941730, at *3 (dismissing where the calls at issue "involved no actual communications" from the defendant) (citing *Katz*, 2022 WL 16950481, at *6); *Gillam,* 2023 WL 2163775, at *3 (dismissing DNC claim where the plaintiff "failed to allege sufficient facts regarding

the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" and "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'" where most of the calls at issue were not answered by plaintiff); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022) ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's pleading burden to provide sufficient factual matter to state a plausible claim" under Section 227(c).). This Court should join them, follow these well-reasoned authorities, and dismiss Plaintiff's entire Complaint on this additional basis.

Here, Plaintiff does not allege the content of the six calls discussed in her Complaint that she vaguely identifies as being "from Extreme Loans" (and, in fact, admits that she did not answer them), nor does she give the content of any "other [allegedly] unsolicited calls from Extreme Loans [made] to her cell phone." *See* ECF No. 1, ¶¶ 27-40, PageID.8-10. Thus, she has not alleged any call at issue fits the definitions above, and cannot do so as a matter of law. In short, "[w]ithout factual allegations as to the content of [the calls Plaintiff received "from Extreme Loans"], Plaintiff's [Complaint] fails to properly allege that such calls were solicitations under the TCPA." *Katz,* 2022 WL 16950481, at *6. *See also Dahdah*, *supra*. And since this fatal defect cannot be cured by amendment, it warrants dismissal with prejudice.

**iii. Plaintiff Fails to Plead Facts Demonstrating a Violation of the TCPA's "Internal" DNC Regulations (Count II).**

As Count II, Plaintiff's threadbare allegations regarding Extreme's supposed lack of internal DNC procedures likewise do not plausibly allege a violation of the TCPA's internal DNC rules. *See also Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 505–06 (D.R.I. 2020) (dismissing where allegations regarding defendants "supposed failure to implement the requisite [internal] procedures [we]re not well-pleaded").

In the Sixth Circuit, "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures[.]" *GVN Michigan, Inc.,* 561 F.3d at 632. In other words, the TCPA's internal DNC regulations do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN Michigan*, 561 F.3d at 632). Thus, the question is whether the caller ***maintained*** such procedures, not merely whether additional calls were allegedly received after a DNC request. *See id.*; *see also Benzion v. Vivint, Inc.*, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) (dismissing where, as here, the complaint simply alleged "that Defendant called Plaintiff back after being asked not to ever call again").

In this case, Plaintiff's scant allegations regarding Extreme's supposed lack of internal DNC procedures are entirely conclusory and speculative, and merely parrot

the statutory text. *See* ECF No. 1, ¶ 18, PageID.6 ("Extreme Loans lacks a sufficient opt-out system to ensure that a consumer who notifies Extreme Loans to stop calling them will be removed from their calling list, again, as per Plaintiff's experience."); *id.* ¶ 59, PageID.16-17 ("Defendant placed calls to Plaintiff …without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.").

Yet, Plaintiff does <u>not</u> allege, for example, that she requested a copy of Extreme's internal DNC policy (as she could have done, per the statute, *see* 47 C.F.R. § 64.1200(d)(1)) and that Extreme failed to produce its policy on demand—which is not a violation of the internal DNC rules by itself but might have given Plaintiff a minimal factual basis to allege whether Extreme had internal procedures in place before she was called. *See also Rahimian v. Adriano*, 2022 WL 798371, at *3 (D. Nev. Mar. 16, 2022) (dismissing where plaintiff did not request copy of defendants' DNC policy and otherwise did not allege further facts to reasonably infer a violation).

Further, Plaintiff's internal DNC claim rests entirely on her assertion that she allegedly received two more calls after making an internal DNC request. *See* ECF No. 1, ¶ 18, PageID.6 and *id.* ¶ 59, PageID.16-17. As noted above, however, courts have recognized that merely alleging receipt of calls after a purported DNC request is inadequate to plausibly allege an internal DNC violation, without more. *See, e.g., DFS*

*Servs. LLC*, *Benzion,* and *Rahimian*, *supra*. Here, there are ***no facts whatsoever*** in the Complaint from which the Court could infer that Extreme did not have or maintain internal DNC procedures at the time of the alleged calls (*e.g.,* that her DNC request was able to be honored faster than it was[4]), as required to state such a claim under binding Sixth Circuit authority. Thus, Count II should be dismissed on this basis, too. *See, e.g.*, *Laccinole*, 453 F. Supp. 3d at 505; *see also Callier v. Nat'l United Grp., LLC,* 2021 WL 5393829, at *7 & 9-10 (W.D. Tex. Nov. 17, 2021) (ruling similarly).

## II. ALTERNATIVELY, THE COURT SHOULD STRIKE CERTAIN IMPROPER ALLEGATIONS UNDER RULES 12(F) AND 23.

Should the Court decide not to dismiss in whole or in part, it should nevertheless strike certain plainly defective allegations under Rules 12(f) and/or 23.

### A. Paragraphs 15-19 are Immaterial, Impertinent, Scandalous, and Unduly Prejudicial and Should be Stricken Accordingly.

Under Rule 12(f), this Court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matter "ha[s] no essential or important relationship to the claim," whereas "impertinent" matter

[4] The FCC has correctly recognized that "some administrative time may be necessary to process [internal DNC] requests." *In Re Rules & Regs. Implementing the TCPA,* 18 F.C.C. Rcd. 14014, 14069 (2003). While the TCPA's internal DNC regulations simply require callers to "honor a residential subscriber's [DNC] request" within a "reasonable time" and not exceeding 30 days, the FCC has interpreted this to require callers to honor such requests "within a ***few days or weeks***" and not immediately. *Id.* ¶ 94 (emphasis added). Here, Plaintiff allegedly made a DNC request on June 22, 2023, and received two more calls on June 27 and July 1, 2023, respectively, but alleges no other calls thereafter. Thus, the only plausible inference to be drawn here is that Extreme had indeed implemented internal procedures when she was called and that her DNC request was timely honored in compliance with FCC regulations.

consists of statements that "do not pertain, and are not necessary, to the issues in question." *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2007 WL 1026421, at *11 (S.D. Ohio Mar. 29, 2007). Here, Plaintiff's Complaint contains immaterial, impertinent and scandalous allegations relating to online statements by unidentified parties and by possibly disgruntled (or perhaps misinformed) former employees of Extreme having nothing to do with this case. *See* ECF No. 1, ¶¶ 15-19, PageID.5-8 (and footnotes thereto). Those improper and immaterial allegations should be stricken.

Federal courts, in the TCPA context and others, have recognized that "'[s]uperfluous historical allegations are a proper subject of a [Rule 12(f)] motion to strike.'" *Hicks,* 2020 WL 9261758, at *5 (quoting *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994))). The same is true for allegations about complaints filed in other cases or, as particularly relevant here, online "complaints" posted anonymously by third parties. *See, e.g., Hicks,* 2020 WL 9261758, at *5-6 (striking similar internet allegations in a case brought by the same counsel representing Plaintiff under Rule 12(f)); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (citing *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009)); *Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20-21 (C.D. Cal. May 5, 2011); *Conde v. Sensa*, 259 F. Supp. 3d 1064, 1071 (S.D.

Cal. 2017); *Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542, at *12-13 (D.N.J. Mar. 30, 2012), *on reconsideration in part*, 2012 WL 12910267 (Aug. 17, 2012)).

In this case, paragraphs 15 through 19 of the Complaint contain numerous improper allegations that should be stricken in their entirety under Rule 12(f). These refer to anonymous posts on third party websites that Plaintiff suggests are reflective of "cold calls" to ***other*** consumers from Extreme. Yet, nothing in those posts suggests Extreme is liable for the ***specific*** alleged calls to Plaintiff at issue ***here***. *See Hicks,* 2020 WL 9261758, at *6 (noting such allegations "offer attenuated information that does little to support Plaintiff's claims"). Thus, Plaintiff's vague and unsubstantiated internet comments about "cold calls" made to others are irrelevant, immaterial, have no bearing on ***Plaintiff*** or ***this*** case, and only serve to unduly prejudice Extreme. *Id*. Thus, the Court should strike those improper allegations under Rule 12(f).

**B. Plaintiff's Faulty Proposed Class Definitions Should Be Stricken Pursuant to Rule 12(f) and Rule 23 on Predominance Grounds.**

The Court should also strike Plaintiff's faulty class definitions (*see* ECF No. 1, ¶ 44, PageID.10-11) and other class-related allegations under Rules 12(f) and 23.

In this Circuit, class allegations may be properly stricken at the pleadings stage prior to discovery pursuant to Rule 12(f) where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met" under Rule 23. *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (quoting *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401, at *2

(S.D. Ohio Nov. 15, 2013)); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming judgment striking class allegations and dismissing complaint where discovery would not alter the central defect in the class claim); *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *10 (W.D. Ky. Sept. 29, 2017) (striking class definition in TCPA case at the pleadings stage).

Moreover, it is also well established that Rule 12(f) motions such as this one serve to "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Glazer v. Reimer L. Co.*, 2019 WL 651599, at *2 (N.D. Ohio Feb. 15, 2019) (quoting *Kennedy v. Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time." *Pilgrim*, 660 F.3d at 949. Thus, federal courts have widely recognized that permitting a facially uncertifiable class to proceed to discovery would place an undue burden and expense upon the parties and the court. *See, e.g., Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (striking class allegations where allowing untenable class claims to proceed past the pleadings stage "would inject significant uncertainty as to the scope of discovery and other pre-trial proceedings") (citation omitted).

Here, the allegations in the Complaint show Plaintiff cannot meet the certification requirement under Rule 23(b)(3), which requires that "questions of law or fact common to class members must predominate over any questions affecting only

individual members[.]" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected* (Sept. 1, 2017). "A common issue of fact or law does not exist unless 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sherrod v. Enigma Software Grp. USA, LLC*, 2016 WL 25979, at *6 (S.D. Ohio Jan. 4, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Along these lines, courts have consistently denied class certification (particularly in internal DNC list/revocation cases) where, as here, individualized consent inquiries predominate. *See, e.g., Sandusky*, 863 F.3d at 469 (affirming denial of class certification where putative class included current customers who provided their fax numbers and identifying who had given the requisite consent would require individualized inquiries); *see also Trenz v. On-Line Administrators, Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying TCPA class and noting "[t]he necessity of individual inquiries is a ***clear bar*** to class certification in TCPA matters") (citing various cases, emphasis added)). Courts have also frequently stricken class allegations at the pleadings stage for this reason. *See, e.g.*, *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Eldridge*, 2017 WL 4364205, at *7-11; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017). This Court should reach the same conclusion in the present case.

In this case, it is apparent from the face of the Complaint that common

questions of law and fact do not predominate and that individualized inquiries would be required. In this regard, Plaintiff seeks to represent two classes of persons for whom Extreme purportedly called on their "residential" numbers "for substantially the same reason Defendant called Plaintiff" including "including at least once" after the "person requested that they stop calling." ECF No. 1, ¶ 44, PageID.10-11. However, the "reason" Extreme allegedly made calls and whether Extreme continued to place telemarketing calls after a request to stop calling cannot be determined on a class wide basis, as individualized issues will inevitably predominate. *See, e.g., Eldridge*, 2017 WL 4364205, at *9 (noting caselaw "favors striking" revocation classes in TCPA cases) (collecting cases)). Indeed, though someone who consented can later request that the caller "stop calling"—*i.e.*, ***revoke*** consent—under the TCPA, they "***cannot use ambiguous statements***" and "must ***clearly*** revoke consent." *Barnett v. Bank of Am., NA*, 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (emphasis added). Thus, the critical legal and factual issues of consent and consent revocation are inextricably intertwined with Plaintiff's proposed class definitions as pled, and individualized determinations on those issues would undoubtedly be needed, at the minimum.

Individualized inquires will also be required to determine whether each class member utilized their number for "residential" purposes. *See Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 135 (N.D. Tex. 2020) (questions such as residential status "require 'evidence that varies from member to member'"). Thus, courts often

deny class certification and/or strike class allegations in TCPA cases on predominance grounds where individualized determinations of "revocation" or "residential" status would be required. *See, e.g., Eldridge, Cholly*, and *Hirsch*, *supra*. Such is true in this case. Therefore, Plaintiff's proposed class definitions should be stricken on this basis.[5]

## CONCLUSION

For all these reasons, the Complaint should be dismissed and/or stricken.

Dated: September 18, 2023

Respectfully submitted,

By: /s/ A. Paul Heeringa
**Manatt Phelps & Phillips, LLP**
*Counsel for Defendant*

[5] Since Plaintiff's faulty class definitions are properly stricken, any and all remaining "class" related allegations in the Complaint (*see, e.g.,* ECF No. 1, ¶¶ 45-49, PageID.11-13) would be superfluous and, therefore, are properly stricken as well. *See, e.g., Flores v. City of Cal. City*, 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019).

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 18, 2023, I filed the foregoing electronically through the Court's CM/ECF system, which caused the following parties or counsel to be served by electronic means on all parties and their respective counsel of record.

*s/ A. Paul Heeringa*

A. Paul Heeringa